UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN DEVORE, | No. 2:18-cv-02487 KJM AC PS |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Pending is a motion to dismiss the operative Second Amended Complaint ("SAC") by Lara Saich, Janet Lewis, Christine Milne, and Glen Welker ("individual state defendants"). ECF No. 31-1 at 7. Plaintiff has opposed the motion (ECF No. 35) and defendants replied (ECF No. 37). For the reasons explained below, the undersigned recommends the motion to dismiss be GRANTED.

**I. BACKGROUND**

Plaintiff initially filed this case and paid the filing fee on September 13, 2018. ECF No. 1. Following a stipulation and briefing in response to an order to show cause, the district judge in this case adopted the undersigned's findings and recommendations allowing plaintiff to file a Second Amended Complaint against CDCR, Christopher Gates, Lara Saich, Janet Lewis, Christine Milne, California Occupational Safety and Health Administration ("Cal-OSHA"), and

1

Marie Blake. ECF No. 26. Plaintiff's Second Amended Complaint, the currently operative complaint in this case, was filed on September 20, 2019. The SAC makes claims against each of individual state defendants and defendant Blake for the following: (1) negligence; (2) violation of 42 U.S.C. § 1983 ("Section 1983"); and (3) infliction of emotional distress (negligent and intentional). ECF No. 30 at 1.

### A. Allegations of the Complaint

Plaintiff is a 61-year-old woman who worked for the State of California for over 26 years, with the last 10 years spent working in the medical healthcare program for CDCR. ECF No. 30 at 4. During her employment at CDCR plaintiff made a complaint to defendants that she was being over-exposed to "nonionizing radiation" (electromagnetic frequencies) in the workplace. Id. Plaintiff advised the defendants that she had medical monitoring devices on her body that made these exposures potentially lethal. Id. Plaintiff made 19 requests for security camera footage to positively identify the perpetrators but was prevented from getting footage because the workplace camera system was out of order for about four months. Id.

Because defendants Lewis, Saich, and Welker did not provide a hazard-free workplace, and because Cal-OSHA and its employee Marie Blake did not conduct an inspection of the workplace, plaintiff hired experts from AAA Security in Salt Lake City, Utah, at her own expense to conduct an investigation of her workplace. Id. at 5. The results showed that electromagnetic frequencies harming plaintiff at her workplace "doubled in power" when she arrived at work, and were connected to plaintiff's employer, CDCR. Id. The results further showed that the electromagnetic frequencies were being used to remotely conduct nonconsensual medical research on CDCR inmates. Id.

When plaintiff learned of the above, CDCR employees Saich and Milne attempted to evade liability and discredit plaintiff by claiming plaintiff was suffering from some sort of mental malady and tried to "railroad" plaintiff into a psychiatric evaluation with a CDCR contractor, even after plaintiff presented them with medical evidence in support of her physical injuries and evidence of plaintiff's mental soundness, which plaintiff obtained at her own expense for $5,500.00 while on authorized federal medical leave. Id.

Plaintiff also learned that defendant Saich was working to protect the interests of IBM corporation, and potentially Hewlett Packard, who were using CDCR inmates for testing of their "IBM 2020 Neural Brain Chip." Id. at 6. Plaintiff alleges that Saich wrongfully fired plaintiff because plaintiff knew about the research. Id. Defendants did not respond to plaintiff's complaint and as a direct and proximate result, plaintiff has been severely damaged and injured, and plaintiff's experts have opined that plaintiff is suffering from acute and chronic radiation poisoning, lead and other heavy metals poisoning, hematologic, cardiologic and immunological illnesses and symptoms, and has evidence of DNA damage and stem cell failure indicating cancer. Id.

Plaintiff alleges she began experiencing physical symptoms at work in mid-2016, after she learned that CDCR inmates were being used for nonconsensual medical experiments and reported the issue pursuant to CDCR's "Zero Tolerance Code of Silence" policy which she signed as a condition of her employment. Id. at 8-9. Her physical symptoms caused her to fall three times at work. Id. at 9. During this time plaintiff also experienced sporadic vehicular assaults and noticed some vehicles repeatedly following her. Id. She reported this to defendants Saich and Lewis.

In early 2017 plaintiff reached out to Dr. Hildegarde Staninger, Ph.D., RIET-1, who is an OSHA institute graduate and actively certified compliance and safety health expert, nationally recognized as an expert in industrial toxicology. Id. at 9-10. Dr. Staninger referred plaintiff to a private investigator and bioenergy engineer at Columbia Investigations, Melinda Kidder. Id. at 10. Investigator Kidder provided preliminary evidence of the medical monitoring devices in plaintiff's body and referred her to AAA Security for testing with a professional electrical engineer. Id. AAA Security tested plaintiff on four occasions in 2017 and positively confirmed that plaintiff had medical devices installed on her body without her consent. Id. Plaintiff believes the devices were installed during a routine plastic surgery. Id.

On August 1, 2017, plaintiff had three specimens surgically removed by Dr. Susan E. Kolb, whom plaintiff understands to be licensed by the State of Georgia as a medical doctor and surgeon with expertise in providing a broad spectrum of plastic and reconstructive surgical care and who has removed numerous similar devices in other patients. Id. at 11. The removed foreign

bodies were determined by pictomicrographs and physical examination at 30x magnification to be medical monitoring devices and piece parts of the same. Id. at 11-12. Some of the parts were identified as built by the Department of Defense at the U.S. Naval Laboratory, and one was positively identified as a particle accelerator. Id. at 12. Additional testing by Applied Consumer Services, Inc. confirmed the specimens were devices which can be used for radiation research and to monitor physiological responses of the person in whom they are installed, and that the devices were in the category of 3D Semiconductors. Id.

On September 5, 2017, plaintiff filed a workplace safety/hazard complaint with Cal-OSHA stating that she was being overexposed to nonionizing radiation in her workplace. Id. A copy of the letter was provided to defendants Lewis, Saich, and Milne. Id. at 13. When plaintiff did not receive a response, Dr. Staninger followed up with an October 2, 2017 letter, expressing her concerns that plaintiff was in imminent danger. Id. Due to the lack of response, Dr. Staninger recommended plaintiff hire a private company to investigate her workplace. Id. It was at this point that plaintiff flew AAA Security to California to conduct an inspection. Id. Results were provided to Dr. Staninger for analysis, which showed the radio signals being received by plaintiff's body while she was at work were directly and/or tangentially connected to CDCR. Id.

Dr. Staninger sent a follow-up letter to Cal-OSHA on October 30, 2017, referencing the additional private testing. Id. Following the October 30, 2017 letter, defendant Marie Blake issued a letter disclaiming any responsibility for plaintiff's request and referring plaintiff to the Federal Communications Commission to investigate the claims of nonionizing radiation in the workplace. Id. at 15. Plaintiff contacted the FCC, but they referred her back to Cal-OSHA. Id. Dr. Staninger sent a letter to the National Institute for Occupational Safety and Health in November 2017, and received a response confirming any investigation would be the responsibility of Cal-OSHA. Id.

The SAC names 5 defendants: Saich, Lewis, Milne, Welker ("individual state defendants") and District Manager of California Occupational Safety and Health Organization (Cal-OSHA) Marie Blake, as well as DOES 1-20. Id. at 7-8. No state agencies are listed. Each named defendant is sued in his or her professional capacity. Id. at 7-8.

B. Motions to Dismiss

Defendants CDCR, Gates, and the individual state defendants (Saich, Lewis, Milne, and Welker) move to dismiss plaintiff's complaint. ECF No. 31-1 at 21. They argue that the plaintiff's claims against the individual state defendants are barred by Eleventh Amendment Immunity. Id. They also contend that formerly named and served defendants Christopher Gates and the California Department of Corrections and Rehabilitation ("CDCR") must be dismissed because the SAC does not allege any claims against them. Id.[1] Defendants argue that plaintiff's common law claims are barred by the Government Claims Act and Labor Code section 3601. Finally, they assert plaintiff failed to state a plausible claim against any of the individual state defendants under any of her asserted theories, and that no claims are alleged against CDCR or Gates. Id. Moving defendants argue no leave to amend should be granted because the current pleading constitutes plaintiff's third attempt to state claims against the defendants, and it is apparent that she is unable to state viable claims. Id.

## II. ANALYSIS

A. Legal Standards Governing Motions to Dismiss Fed. R. Civ. P. 12(b)(6)

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

---

[1] Defendants also take issue with the fact that plaintiff claims to replace Christopher Gates with new defendant Glen Welker, without ever properly adding Welker as a defendant. See ECF No. 30 at 4.

action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  Terminated Defendants CDCR, Gates, and Cal-OSHA

As a preliminary matter, it is clear from plaintiff's SAC that no claims are asserted against defendant Gates or defendant CDCR. The operative SAC does not list CDCR or Gates in the

6

caption. ECF No. 30 at 1. Nor does the SAC name Gates or CDCR in its list of parties. Id. at 6-8. Nor does the SAC identify any cause of action against Gates or CDCR. Id. at 18 (negligence), 24 (§1983 violations), 25-26 (negligent and intentional infliction of emotional distress). In her opposition to the motion to dismiss, plaintiff claims that "it is clear from the onset [sic] that Plaintiff intended to sue CDCR since it was listed on the initial filing." ECF No. 10 at 16. Plaintiff relies on her initial complaint filed with the Department of General Services listing defendants as "CDCR and its agents, employees, and contractors." Id. at 10. Plaintiff acknowledges Gates was removed from the SAC; she replaced him with defendant Welker. Id. at 11.

Moving defendants are correct that because CDCR and Gates are not listed in the SAC, they have been dropped from this case. This is also true of defendant Cal-OSHA, which is also not listed anywhere as a defendant in plaintiff's SAC.[2] See ECF No. 30. "The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1990). "An amended complaint that drops a defendant named in the original complaint effectively dismisses that defendant from the action." Rasidescu v. Midland Credit Management, Inc., 435 F.Supp.2d 1090, 1001 (S.D. Cal. 2006) (citing London v. Coopers & Lybrand, 644 F.2d 811 (9th Cir. 1981)). Further, under Federal Rule of Civil Procedure 10(a) each defendant is required to be named in the caption of the complaint. For all of these reasons, the court must conclude that plaintiff has dropped CDCR, Gates, and Cal-OSHA from this case. Even if the court were to overlook the fact that none of these entities/individuals are identified in the caption of the SAC (which it must not), it would be impossible to overlook the fact that there are no claims made

---

[2] The undersigned is aware that the moving defendants do not represent Cal-OSHA and do not move to have Cal-OSHA terminated. Nonetheless, the court must acknowledge here that Cal-OSHA has *already been terminated* from this case by the plaintiff because she does not name and alleges no claim against it. Plaintiff indicates in her opposition that she intends to move for default judgment against Cal-OSHA. ECF No. 35 at 2-3. Judgment cannot be entered against an entity that is not a party to the case, and defendant has not pled Cal-OSHA as a party to this case. Hal Roach Studios, Inc.., 896 at 1546 ("It is well established that an individual is not bound by a judgment in personam resulting from litigation in which he is not named as a party.").

against any of them in the SAC. There is simply nothing for any of these entities/individuals to defend against.

Because CDCR, Gates, and Cal-OSHA are not named as defendants in the SAC and no claims are brought against them, they have already been effectively terminated from this case by plaintiff. The court must acknowledge that they are terminated from this action. The docket should reflect that these defendants have been terminated.

### C. Eleventh Amendment Immunity for § 1983 Claims

Plaintiff's claims against the individual state defendants are barred by the Eleventh Amendment. Citizens cannot bring suit against their own state in federal court because the Eleventh Amendment provides immunity, unless the case falls into limited exceptions in which Congress has abrogated the immunity or the state has expressly consented to the jurisdiction of the federal court. Micomonaco v. State of Washington, 45 F.3d 316, 319 (9th Cir. 1995). "'It is well established that agencies of the state are immune under Eleventh Amendment from private damages or suits for injunctive relief brought in federal Court.'" Sato v. Orange County Department of Education, 861 F.3d 923, 928 (9th Cir. 2017) (quoting Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 (9th Cir. 2003)). Lawsuits brought against employees in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent" and are barred by Eleventh Amendment immunity. Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Smith v. Reyes, 904 F.Supp.2d 1070, 1073 (S.D. Cal. 2012) (citing Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999)).

Section 1983 authorizes a civil action against any "person" who, under color of state law, deprives an individual of their constitutional rights. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacities are "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), see also, Martin v. Chugh, 301 Fed.Appx. 719, 719 (9th Cir. 2008). Furthermore, nothing in § 1983 clearly abrogates Eleventh Amendment immunity, thus, even if the State were a person, it would still be entitled to Eleventh Amendment immunity. Will, 491 U.S. at 67-68.

////

Here, the SAC specifies that the individual state defendants are sued in their "professional capacities" – not in their individual capacities. ECF No. 30 at 7. Plaintiff's only discussion of this issue in her opposition is in the context of CDCR's status as a defendant; she states that she "did not identify any of the CDCR defendants as being sued in their 'Individual' capacity so as to exclude Plaintiff's employer." ECF No. 35 at 10. Plaintiff misunderstands the issue. Even though individuals sued in their official capacity "literally are persons," when the suit is brought against a state employee in their official capacity, the suit "is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71. That plaintiff's suit against the individual state defendants is indeed a suit against their office is supported by the claims made in the SAC, which generally allege duties that run to CDCR. For example, in support of her claims against Lewis, Saich and Welker, plaintiff relies on the regulations (such as the California Safety and Health Act of 1973) relating to workplace safety, that – as she alleges – place a burden on the employer. ECF No. 30 at 19-20. By way of further example, plaintiff claims that the Family Medical Leave Act imposes duties and limitations on an employer to support her claims against Milne and Saich. Id. at 23-26. Nothing in plaintiff's SAC nor her opposition indicates an intent that the individual state defendants be sued in their individual capacitates; indeed, plaintiff expressly denies such intent. Accordingly, the undersigned concludes that plaintiff is suing these defendants in their official capacities. The claims under 42 U.S.C. § 1983 are therefore barred by Eleventh Amendment immunity.

D. Plaintiff's Negligence and Emotional Distress Claims are Barred by the California Tort Claims Act

Plaintiff's negligence and negligent/intentional infliction of emotional distress claims cannot proceed because plaintiff did not file a claim in compliance with the California Tort Claims Act. California Government Code section 950.2 provides that a cause of action against a current or former employee for injuries resulting from an act or omission engaged in during the course and scope of employment is barred unless a claim is presented against that employee pursuant to the Tort Claims Act. Cal. Gov. Code § 950.2; Meester v. Davies, 11 Cal.App.3d 342, 348 (1970) ("a claim specifying the alleged wrongful acts of a public employee committed while

9

acting within the scope of his employment must be presented to the public entity and to the individual employee as a condition precedent to filing an action.").

Here, plaintiff did file a California Tort Claims Act Claim, and attached a copy to her SAC. ECF No. 30 at 32-33. The Claim is marked as having been received on February 27, 2018. Id. at 32. Under "agencies or employees against whom this claim is filed" plaintiff listed "(1) California Department of Corrections and Rehabilitation ("CDCR"), and CDCR's agents, contractors, and employees, (2) CAL-OSHA, (3) California Department of Technology, (4) California Attorney General." Id. at 32. In her opposition briefing, plaintiff acknowledges she did not identify the individual state defendants by name in her CTA Claim, but asserts she subsequently amended her Claim and served it on the individuals. ECF No. 35 at 12-13. Any alleged amendment does not save plaintiff's SAC, for several reasons. First, on a motion to dismiss the court may look only to the pleadings and can therefore not consider the purportedly amended Claim. Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). Second, even assuming the Claim was amended, it would have had to be amended within the 180 day limitations period under California Government Code section 911.2. Cal. Gov. Code, § 910.6 in order to relate back and be timely. No such facts are alleged in the SAC. Thus, plaintiff's claims against the individual state defendants are barred for failure to comply with the California Tort Claims Act.

     E. <u>Workers Compensation Exclusivity Bars Common Law Claims</u>

Plaintiff's claims for negligence and negligent/intentional infliction of emotional distress are barred as to the individual state defendants pursuant to the doctrine of workers compensation exclusivity. California Labor Code section 3601 provides that the workers' compensation system is the exclusive remedy for an employee injured on the job. Cal. Lab. Code § 3601. In general, claims for negligence and infliction of emotional distress are preempted by Labor Code section 3601. <u>Cole v. Fair Oaks Fire Protection Dist.</u>, 43 Cal.3d 148, 156 (1987); <u>Cole v. State of California</u>, 11 Cal.App.3d 671, 675-676 (1970); see also <u>Kalski v. Cal. Ass'n of Professional Employees</u>, 18 Fed.Appx. 497, 499 (9th Cir. 2001). Conduct that is part of the normal employment relationship, even if the conduct is intentional or malicious or "may be characterized

as intentional, unfair or outrageous, [] is nevertheless covered by the workers' compensation exclusivity provisions." Shoemaker v. Myers, 52 Cal.3d 1, 25 (1990).

Plaintiff does not allege any conduct in her SAC that would remove her claim from the exclusive remedy provided for by Labor Code section 3601. Plaintiff argues in her opposition that the "dual capacity" exception defeats exclusivity because defendant Saich served a separate legal role providing oversight of research subjects for the IBM corporation which was conducting medical research experiments on prisoners, and this was Saich's role as relates to plaintiff. ECF No. 35 at 12. However, the dual capacity doctrine, which once held that if an employer occupied another relationship towards its employee different from those arising out of the employment relationship the employer could be held liable in tort for breach of that duty, has been largely abrogated by statute. Jones v. Kaiser Industries Corp., 43 Cal.3d 552, 560 (1987). Labor Code section 3602(a) as amended expressly states: "The fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer." Cal. Labor Code, § 3602(a); see also Singh v. Southland Stone, U.S.A., Inc., 186 Cal.App.4th 338, 368 (2010).

F. Failure to State a Claim

Though the defects discussed above are sufficient to support dismissal, the court also agrees with the moving defendants that the SAC does not allege facts sufficient to state a claim.

1. Failure to State Constitutional Claims Under § 1983

Plaintiff's complaint alleges violations of her Fourteenth Amendment Procedural Due Process rights pursuant to 42 U.S.C. §1983.[3] The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U. S. Const. Am.

---

[3] Plaintiff 's § 1983 claim also cites the Family Medical Leave Act, the California Safety and Health Act of 1973 and the California Family Rights Act. A § 1983 claim must be predicated on a violation of federal law; state statutory violations are not cognizable. 42 U.S.C. § 1983. Although the Ninth Circuit has not addressed whether the federal Family Medical Leave Act can support § 1983 liability, the undersigned agrees with lower courts who have concluded that it does not. See, e.g., Webb v. County of Trinity, 734 F. Supp. 2d 1018, 1031 (E.D. Cal. 2010); Jackson v. Peralta Cmty. Coll. Dist., 2012 WL 12920626, at *6 (N.D. Cal. May 1, 2012).

14. In order to make a claim for violation of procedural due process, a plaintiff establish two elements: first, that a protected life, liberty, or property interest was taken by the state actor; second, that the procedural safeguards surrounding the deprivation were inadequate. Board of Regents v. Roth, 408 U.S. 564, (1972).

Plaintiff's SAC does not demonstrate that her life, liberty, or property interests were taken by a state actor; she simply asserts that her due process rights were violated when (1) defendants Saich, Lewis and Welker failed to follow the laws of 29 U.S.C. section 654, and the California Occupational Safety and Health Act of 1973; (2) defendant Welker failed to maintain the security cameras in good working order, which allegedly kept plaintiff from identifying perpetrators and obtaining a TRO; and (3) defendants Saich and Milne failed to follow the FMLA and CFRA while managing plaintiff's disability. ECF No. 30 at 24-25. Plaintiff does not refute that these assertions fail to amount to a constitutional violation under § 1983 in her opposition. See ECF No. 35. Plaintiff's failure to state a plausible claim under § 1983 requires dismissal of this claim.

### 2. Failure to State Negligence Claims

Plaintiff's claims of negligence cannot survive because plaintiff fails to establish a duty of care. A claim for negligence under California law requires that a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." Wells Fargo Bank, N.A. v. Renz, 795 F.Supp.2d 898, 924–25 (N.D. Cal. 2011) (citing Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir. 2003)). "A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." The Ratcliff Architects v. Vanir Constr. Mgmt., Inc., 88 Cal.App.4th 595, 604–05 (2001).

The SAC alleges duty imposed by statute – in particular: (1) 29 USC section 654, et seq.; (2) the California Occupational Safety and Health Act of 1973 - without reference to a specific section; (3) the federal Family Medical Leave Act ("FMLA"); and (4) the California Family Rights Act ("CFRA"). ECF No. 30 at 18-19. Fatally for plaintiff's claims, these laws do not impose duties on the individual state defendants. First, The Occupational Safety and Health Act, 29 USC § 654 et seq., expressly does not apply to State employers, nor does it create obligations for an employee's co-workers. Section 654 provides that an employer is to furnish each

employee with a place of employment that is free from recognized hazards that are likely to cause death or serious injury and are required to comply with occupational safety and health standards. 29 U.S.C. § 654(a). However, the term "employer" is defined as "a person engaged in business affecting commerce who has employees, but does not include the United States (not including the United States Postal Service) or any State or political subdivision of a State." 29 U.S.C. § 652(5). There is no duty imposed on the individual state defendants because they were not plaintiff's employer, and even if they were somehow construed to be synonymous with CDCR, there would be no duty because CDCR is a subdivision of the State and the statue at issue expressly does not apply.

Second, plaintiff cites generally to the California Occupational Safety and Health Act of 1973, but more specifically to the obligation of an employer to establish an Injury and Illness Prevention Program, which she alleges includes an obligation to communicate with employees regarding new or previously unrecognized hazards. ECF No. 30 at 19-20. California Code of Regulations § 1509(a) requires: "Every employer shall establish, implement and maintain an effective Injury and Illness Prevention Program in accordance with section 3203 of the General Industry Safety Orders." This obligation runs to an employer (in this case, CDCR), and does not create any duty for the individual state defendants. Finally, neither the FMLA nor CFRA prohibit an employer from obtaining second opinions regarding medical certifications or from requiring fitness for duty examinations, and nothing in these laws creates a duty for an individual employee to refrain from seeking fitness for duty examinations. 29 C.F.R. §§ 825.307(b), 825.312; 2 C.C.R. § 11091(b)(2).

Because plaintiff has failed to establish any duty imposed on the individual state defendants which they allegedly breached, she does not state a prima facie negligence claim against them. This failure to state a plausible negligence claim is further grounds for dismissal.

### 3. Failure to State Emotional Distress Claim

Plaintiff likewise fails to establish a prima facie claim for Negligent Infliction of Emotional Distress ("NIED") or Intentional Infliction of Emotional Distress ("IIED"). First, NIED is actually a species of negligence, and duty is an element of the claim. Friedman v. Merck

13

& Co., 107 Cal.App.4th 454, 463 (2003). There is no general duty to avoid negligently causing emotional distress to another; the duty must be imposed independently by law or by the special relationship between the parties. Id. As discussed above, plaintiff's SAC does not identify a duty that gives rise to a negligence claim.

Second, the elements of IIED include "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050–1051 (2009) (internal citations omitted). The conduct alleged is only "outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id. Here, the conduct plaintiff alleges against the individual state defendants amounts to allowing her to work in an unsafe environment and requiring a second opinion on her mental status. The only truly extreme and outrageous conduct alleged in the SAC is the secret implantation of technology in plaintiff's body, and she does not allege this was done by any of the individual state defendants. ECF No. 30 at 10. Thus, plaintiff fails to state a plausible IIED claim against them.

### G. Leave to Amend Must be Denied

While courts should generally grant leave to amend freely, particularly to pro se litigants, the court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. See Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008). Here, leave to amend is not appropriate for several reasons. First, plaintiff has already amended her complaint twice. ECF Nos. 1 (complaint), 14 (first amended complaint), 30 (second amended complaint). Second, the undersigned finds that further leave to amend would be futile in light of the numerous deficiencies discussed above. For example, the facts alleged in plaintiff's SAC are clear, and they nonetheless fail to establish any duty running to the individual state defendants. The undersigned can think of no additional facts

that could be added to cure this deficiency. Though a pro se plaintiff is generally entitled to an opportunity to correct defects in a complaint by amendment, that step is not appropriate where, as here, the defects cannot be cured. Noll, 809 F.2d at 1448. Third, further leave to amend would be unduly prejudicial to defendants, who would be forced to litigate meritless claims. Finally, the undersigned finds that the allegations lack the facial plausibility required by Twombly, supra, 550 U.S. at 570.

For all of these reasons, dismissal should be granted without leave to amend.

### III. CONCLUSION

Accordingly, the undersigned recommends as follows:

1. Because no claims have been brought against defendants CDCR, Gates, and Cal-OSHA, the Clerk of Court should acknowledge their termination from this case on the docket; and
2. The motion to dismiss (ECF No. 31) should be GRANTED and this case should be DISMISSED as to remaining moving defendants Welker, Saich, Lewis, and Milne.[4]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: December 13, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[4] This recommendation leaves Cal-OSHA employee Maria Blake as the sole remaining defendant in this case.